UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JONATHAN CHICK, *on behalf of himself and*
*all others similarly situated*,

                              Plaintiff,

        -against-

GEICO GENERAL INSURANCE COMPANY and
CCC INTELLIGENT SOLUTIONS, INC.,

                            Defendants.
-----------------------------------------------------------------X

Docket No.:
2:24-CV-01124

### DECLARATION OF JAMIE L. HALAVAIS IN SUPPORT OF DEFENDANT GEICO GENERAL INSURANCE COMPANY'S LETTER MOTION TO COMPEL APPRAISAL AND STAY CASE PENDING APPRAISAL

I, Jamie L. Halavais, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, the following.

1.     I am a member with Dickinson Wright PLLC and am admitted in the above-captioned action *pro hac vice* to represent Defendant GEICO General Insurance Company ("GEICO") and I am fully familiar with the facts stated here.

2.     I submit this declaration in support of GEICO's Letter Motion to Compel Appraisal and Stay Case Pending Appraisal.

3.     Attached hereto as Exhibit 1 is a Certified Copy of Plaintiff Jonathan Chick's insurance policy with GEICO General Insurance Company, redacting Plaintiff's personally identifiable information.

4.     Attached hereto as Exhibit 2 is a copy of the April 16, 2024 Declaration of Kevin Costigan in support of GEICO's Letter Motion to Compel Appraisal and Stay Case Pending Appraisal.

5.      Attached hereto as Exhibit 3 is a copy a February 29, 2024 letter from GEICO's counsel to Plaintiff's counsel demanding appraisal under the terms of Plaintiff's insurance policy with GEICO General Insurance Company.

6.      Attached hereto as Exhibit 4 is a copy of a March 13, 2024 letter from Plaintiff's counsel to GEICO's counsel declining appraisal.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at Maricopa County, Arizona on April 16, 2024.

By: */s/ Jamie L. Halavais*
Jamie L. Halavais

Exhibit 1



750 Woodbury Rd
Woodbury, NY 11797

CERTIFIED DOCUMENTS
The undersigned certifies the
attached documents as true
and accurate, reflecting the
contents maintained in GEICO'S
records with respect to policy

Number: ___4206357420___

Signature: _____ Date:___ 2/22/2024

Sensitivity: General/Internal



**Tel:** 1-800-841-3000

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**GEICO General Insurance Company**
One GEICO Boulevard
Fredericksburg, VA 22412-0003

## Policy Number: 4206-35-74-20
## Coverage Period:
03-10-23 through 09-10-23
12:01 a.m. local time at the address of the named insured.

Date Issued: February 3, 2023

JONATHAN CHICK ████████
████████
MERRICK NY  11566-4719

Email Address: ████████

| **Named Insured** | **Additional Drivers** |
|---|---|
| Jonathan Chick | None |

| Vehicles | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|
| 1 1998 Jeep Cherokee | 1J4FJ68S3WL269658 | MERRICK NY 11566-4719 | |
| 2 2018 Volks Atlas | 1V2RR2CA3JC524772 | MERRICK NY 11566-4719 | ████████ |

+ Supplementary Uninsured/Underinsured Motorist Coverage includes out-of-state Uninsured/Underinsured Motorist Coverage. The maximum amount payable under SUM Coverage shall be the policy's SUM limits reduced and thus offset by Motor Vehicle Bodily Injury Liability Insurance Policy or bond payments received from, or on behalf of, any negligent party involved in the accident, as specified in the SUM Endorsement.

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 |
|---|---|---|---|
| Bodily Injury Liability Each Person/Each Occurrence | $300,000/$300,000 | $325.30 | $314.80 |
| Property Damage Liability | $50,000 | $193.00 | $199.60 |
| Basic Personal Injury Protection Please Refer To The New York No-Fault Benefits Section | Opt-A/50,000/2,000 W/L | $141.80 | $116.30 |
| Supplementary Uninsured/ Underinsured Motorist (SUM) + Each Person/Each Occurrence | $300,000/$300,000 | $101.30 | $101.30 |
| Comprehensive (Excluding Collision) | $500 Ded/Full Glass | $24.40 | $100.50 |

Tier H

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 |
|---|---|---|---|
| Collision | $500 Ded | $105.80 | $440.50 |
| Emergency Road Service | Full | $10.70 | $7.70 |
| Rental Reimbursement | $50 Per Day $1,500 Max | $32.80 | $32.80 |
| **Six Month Premium Per Vehicle** | | **$935.10** | **$1,313.50** |
| **Total Six Month Premium** | | | **$2,248.60** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

**New York No-Fault Benefits Section**
Below is a breakdown of your No-Fault (PIP) coverages to show how much No-Fault coverage you have and the premium. The premiums shown below are already included in your 6 month premium. Your total premium is shown in the coverage section. Your No-Fault coverages with premiums and your other coverages and premiums are shown in the Coverage section. REFER TO THE COVERAGE SECTION AND THE PERSONAL INJURY PROTECTION AMENDMENT FOR THE OPTION YOU CARRY.

| Coverage | Limit and Deductibles | Vehicle 1 | Vehicle 2 |
|---|---|---|---|
| Basic Personal Injury Protection | $50,000.00 | $141.80 | $116.30 |
| **Total** | | **$141.80** | **$116.30** |
| Aggregate No-Fault Benefits Available | | $50,000.00 | $50,000.00 |
| | | NON Ded | NON Ded |

| | |
|---|---|
| **Maximum Monthly Work Loss Benefit | $2,000.00 |
| Other Necessary Expenses Per Day | $25.00 |
| Death Benefit | $2,000.00 |

** THE MAXIMUM MONTHLY WORK LOSS BENEFIT AND OTHER NECESSARY EXPENSES PER DAY ARE INCLUDED IN THE AGGREGATE SHOWN ABOVE. THE $2,000 DEATH BENEFIT IS IN ADDITION TO THE AGGREGATE.

| Discounts and Premium Reductions | | Vehicle 1 | Vehicle 2 |
|---|---|---|---|
| **The total value of your discounts and premium reductions is $1,133.00** | | | |
| Multi-Car | | $103.20 | $143.30 |

| Discounts and Premium Reductions | Vehicle 1 | Vehicle 2 |
|---|---|---|
| Multiline | $98.90 | $141.20 |
| Passive Restraint/Air Bag | $58.60 | $47.70 |
| 5 Year Good Driving | $182.70 | $256.90 |
| Anti-Theft Device | - | $10.90 |
| Daytime Running Lights | - | $10.50 |
| Anti-Lock Brakes | - | $79.10 |
| **Total** | **$443.40** | **$689.60** |

The Reductions shown above are already reflected in your six month premium.

**Contract Type:**    FAMILY

**Contract Amendments:**  ALL VEHICLES - A30NY(04-20) A54NYA(07-22) SIGPGCW(07-20)

**Unit Endorsements:**  UE316E(02-16) (VEH 2); A115S(08-20) (VEH 1,2); M489NY(09-21) (VEH 1,2); A431NY(04-20) (VEH 1,2); A331(04-20) (VEH 1,2)

**Class, Symbols and Vehicle Liability Symbol:**  A -N -    -L C C S(VEH 1);  A -N -    -L 40 40 U(VEH 2)

---

### Important Policy Information

- Congratulations! You have earned the free Accident Forgiveness benefit. That means we will waive the surcharge associated with the first at-fault accident caused by an eligible driver on your policy.

- Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

- Active Duty, Guard, Reserve, Honorably Discharged Veteran, or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

- Confirmation of coverage has been sent to your lienholder and/or additional insured.

- Your rate is partly determined by factors including your credit based insurance score, driving activity, and vehicle usage. If you think any of these characteristics have recently changed, please contact us at 1-866-319-8690 for a policy review.

- A $5 surcharge has been added to the policy for the vehicle registered in New York.  Please refer to the enclosed flyer, M544NY, that explains the New York Automobile Theft Prevention Program in detail.

- If your payment is dishonored by your bank or financial institution, GEICO will assess a $20.00 service fee to your account to cover the additional time and expense we incur to collect your premiums.

## Important Policy Information

- Claims incurred while any vehicle is being used as a public or livery conveyance, including while the vehicle is being used as a livery conveyance in connection with a transportation network company may not be covered by this contract. We do not make such coverage available on an optional basis.



One GEICO Plaza
Washington, DC 20076-0001
Telephone: 1-800-841-3000

# New York Family Automobile Insurance Policy

# YOUR POLICY INDEX

Page

**SECTION I - Liability Coverages**...................................  4

**Bodily Injury Liability And Property Damage Liability Your Protection Against Claims From Others**

Definitions
Losses We Will Pay For You
Additional Payments We Will Make Under The Liability Coverages
Exclusions
Persons Insured
Financial Responsibility Laws
Out Of State Insurance
Limits Of Liability
Other Insurance
Conditions
    Notice
    Two Or More Autos
    Assistance And Cooperation
    Of The Insured
    Action Against Us
    Subrogation

**Section II - Automobile Medical Payments Coverage**........................................................  9

**Protection For You And Your Passengers For Medical Expenses**

Definitions
Payments We Will Make
Exclusions
Limits Of Liability
Other InsuranceFor A Loss
Conditions
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports-Proof And Payment of Claims
    Subrogation

**Section III - Physical Damage Coverages**....................  10

**Your Protection For Loss Of Or Damage To Your Car**

Definitions
Losses We Will Pay For You
    Comprehensive (Excluding Collision)
    Collision
Additional Payments We Will Make Under the Physical Damage Coverages
Exclusions
Limit Of Liability
Other Insurance
Conditions
    Inspection
    Assistance And Cooperation Of The Insured

Page

Action Against Us
Insured's Duties In Event Of Loss
Recovery Of Stolen Or Abandoned Autos
Appraisal
Payment Of Loss
No Benefit To Bailee
Subrogation

**Section IV - Supplementary Uninsured/ Underinsured Motorists Coverage**.......................  14

**Protection For You And Your Passengers For Injuries Caused By Uninsured Motorists**

Insuring Agreements
Definitions
Damages For Bodily Injury Caused By Uninsured
    Motor Vehicles
Sum Coverage Period And Territory
Exclusions
Conditions
    Policy Provisions
    Notice And Proof Of Claim
    Medical Reports
    Notice Of Legal Action
    Sum Limits
    Maximum Sum Payments
    Non-Stacking
    Priority Of Coverage
    Exhaustion Required
    Release Or Advance
    Non-Duplication
    Arbitration
    Subrogation
    Payment Of Loss By Company
    Action Against Company
    Survivor Rights

**Section V - General Conditions**............................  17

**The Following Apply To All Coverages In This Policy**

Territory
Premium
Changes
Disposal of Vehicle
Assignment
Policy Period
Cancellation By The Insured
Cancellation By Us
Cancellation By Us Is Limited
Renewal
Dividend Provision
Notice
Two Or More Autos
Assistance And Cooperation Of The Insured
Declarations
Fraud And Misrepresentation
Examination Under Oath
Terms Of Policy Conformed to  Statutes
Choice Of Law

**Section VI - Amendments And Endorsements .............20**

**1. Mandatory Personal Injury Protection**

**Endorsement**
First Party Benefits
Basic Economic Loss
Medical Expense
Work Loss
Other Expenses
Death Benefit
Eligible Injured Person
Exclusions
Definitions

Conditions
    Action Against Company
    Notice
    Proof Of Claim: Medical, Work Loss, And Other
       Necessary Expenses
    Arbitration
    Reimbursement And Trust Agreement
    Other Coverage
Excess Coverage
Constitutionality

**2. Rental Vehicle Coverage Endorsement**
Definitions
Priority Of Payment
Exclusions
Subrogation

**3. Special Endorsement - United States
Government Employees**

Whenever, "he", "his", "him", "himself" appears in this policy, you may read "she", "her", "hers", or "herself". Throughout this policy, "use" of a vehicle includes loading and unloading.

## AGREEMENT

We, the Company named in the Declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the Declarations attached to this policy and if you pay your premium when due, we will do the following:

---

### SECTION I - LIABILITY COVERAGES - BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY
### YOUR PROTECTION AGAINST CLAIMS FROM OTHERS

---

**DEFINITIONS**

The words bolded and italicized in **Section I** of this policy are defined below.

1. ***Auto business*** means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. ***Bodily injury*** means bodily injury to a person, including resulting sickness, disease or death.

3. ***Digital network*** means any system or service offered or utilized by a ***transportation network company*** that enables ***transportation network company prearranged trips*** with ***transportation network company drivers.***

4. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

5. ***Insured*** means a person or organization described under **PERSONS INSURED**.

6. ***Non-owned auto*** means a ***private passenger auto, farm auto, utility auto*** or ***trailer*** not owned by or furnished for the regular use of either ***you*** or ***your relatives***, other than a ***temporary substitute auto***. ***You*** or ***your relative*** must be using the ***non-owned auto*** or ***trailer*** within the scope of permission given by its owner. Except for a ***temporary substitute auto***, an auto rented or leased for more than 30 days will be considered as furnished for regular use.

7. ***Owned auto*** means:

   (a) a vehicle described in this policy for which a premium charge is shown for these coverages;

   (b) a ***trailer*** owned by ***you***;

   (c) a ***private passenger auto***, ***farm auto*** or ***utility auto***, ownership of which ***you*** acquire during the policy period or for which ***you*** enter into a lease for a term of six months or more during the policy period, if

       (i) it replaces an ***owned auto*** as defined in (a) above; or

       (ii) we insure all ***private passenger autos***, ***farm autos*** or ***utility autos*** owned or leased by ***you*** on the date of the acquisition, and ***you*** ask us to add it to the policy no more than 30 days later;

   (d) a ***temporary substitute auto***.

8. ***Private passenger auto*** means a four-wheel private passenger, station wagon or jeep-type auto.

9. ***Property damage*** means injury to or destruction of property. This includes loss of use of the property.

10. ***Relative*** means a person related to ***you*** who resides in ***your*** household.

11. ***Temporary substitute auto*** means an auto or ***trailer***, not owned by ***you***, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the ***owned auto*** or ***trailer*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

12. ***Trailer*** means a trailer designed to be towed by a ***private passenger auto***. If the vehicle is being used for business or commercial purposes, it is a ***trailer*** only while used with a ***private passenger auto***, ***farm auto*** or ***utility auto***. ***Trailer*** also means a farm wagon or farm implement used with a ***farm auto***.

13. ***Transportation network company*** or ***TNC*** means a person, corporation, partnership, sole proprietorship, or other entity that is licensed pursuant to the New York Vehicle and Traffic Law and is operating in New York state exclusively using a ***digital network*** to connect ***transportation network company passengers*** to ***transportation network company drivers*** who provide ***transportation network company prearranged trips***.

14. ***Transportation network company driver*** or ***TNC driver*** means an individual who:

   (a) Receives connections to potential ***passengers*** and related services from a ***transportation network company*** in exchange for payment of a fee to the ***transportation network company***; and

   (b) Uses a ***TNC vehicle*** to offer or provide a ***transportation network company prearranged trip*** to ***transportation network company passengers*** upon connection through a ***digital network*** controlled by a ***transportation network company*** in exchange for compensation or payment of a fee.

15. *Transportation network company passenger* or *passenger* means a person or persons who use a *transportation network company's digital network* to connect with a *transportation network company driver* who provides *transportation network company prearranged trips* to the *passenger* in the *TNC vehicle* between points chosen by the *passenger*.

16. *Transportation network company prearranged trip* or *trip* means the provision of transportation by a *transportation network company driver* to a *passenger* provided through the use of a *TNC's digital network*:

   (a) beginning when a *transportation network company driver* accepts a *passenger's* request for a *trip* through a *digital network* controlled by a *transportation network company*; and

   (b) continuing while the *transportation network company driver* transports the requesting *passenger* in a *TNC vehicle*; and

   (c) ending when the last requesting *passenger* departs from the *TNC vehicle*.

   *Transportation network company prearranged trip* or *trip* does not include transportation provided through any of the following:

   (i) shared expense carpool or vanpool arrangements, including those as defined in section one hundred fifty-eight-b of the New York Vehicle and Traffic Law; and

   (ii) use of a taxicab, livery, luxury limousine, or other for-hire vehicle, as defined in the New York Vehicle and Traffic Law, section 19-502 of the administrative code of the city of New York, or as otherwise defined in local law.

17. *Transportation network company vehicle* or *TNC vehicle* means a vehicle that is:

   (a) used by a *transportation network company driver* to provide a *transportation network company prearranged trip* originating within the state of New York; and

   (b) owned, leased or otherwise authorized for use by the *transportation network company driver*.

   *Transportation network company vehicle* or *TNC vehicle* does not include :

   (i) a taxicab, as defined in section one hundred forty-eight-a of the New York Vehicle and Traffic Law and section 19-502 of the administrative code of the city of New York, or as otherwise defined in local law;

   (ii) a livery vehicle, as defined in section one hundred twenty-one-e of the New York Vehicle and Traffic Law, or as otherwise defined in local law;

   (iii) a black car, limousine, or luxury limousine, as defined in section 19-502 of the administrative code of the city of New York, or as otherwise defined in local law;

   (iv) a for-hire vehicle, as defined in section 19-502 of the administrative code of the city of New York, or as otherwise defined in local law;

   (v) a bus, as defined in section one hundred four of the New York Vehicle and Traffic Law;

   (vi) any motor vehicle weighing more than six thousand five hundred pounds unloaded;

   (vii) any motor vehicle having a seating capacity of more than seven passengers; and

   (viii) any motor vehicle subject to section three hundred seventy of the New York Vehicle and Traffic Law.

18. *Utility auto* means a vehicle, other than a *farm auto*, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

19. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

20. *You* and *Your* means only the individual(s) named in the **Declarations Page** as **Named Insured** and his or her spouse if a resident of the same household.

   *You* and *your* does not include any individual(s) named in the **Declarations Page** as:

   (a) **Additional Drivers**;

   (b) **Additional Driver**; or

   (c) any other individual(s).

## LOSSES WE WILL PAY FOR YOU

Under **Section I**, we will pay damages which an *insured* becomes legally obligated to pay because of:

(a) *bodily injury* sustained by a person; and

(b) *property damage*

arising out of the ownership, maintenance or use (including loading or unloading) of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy even if the claim or suit is groundless. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered law suit.

3. All interest accruing after the entry of a judgment on the amount of that judgment which is within our limit of liability, until we have paid, offered, or deposited in court that part of a judgment not exceeding the limit of our liability.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments. The face amount of these bonds may not exceed the applicable limit of liability.

5. Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned auto** not to exceed $250 per bail bond.

6. We will upon request by an **insured**, provide reimbursement for the following items:

   (a) Reasonable costs, up to $500, incurred when that **insured** provides and renders first aid to others at the time of an accident involving an **owned auto** or **non-owned auto.**

   (b) Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.

   (c) All reasonable costs incurred by an **insured** at our request.

## EXCLUSIONS

**Section I** does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

1. Section I does not apply to **bodily injury** or **property damage** while any motor vehicle or **trailer** is being used as a public or livery conveyance to carry passengers for hire, or while any motor vehicle or **trailer** is used to carry goods for hire. However this exclusion does not apply to an ordinary car pool or share-the-expense car pool. A share-the- expense car pool is one where the only reimbursement an **insured** receives is the reasonable cost of gas and depreciation for the distance traveled.

2. Section I does not apply to **bodily injury** or **property damage** caused intentionally by or at the direction of an **insured**.

3. Section I does not apply to **bodily injury** or **property damage** arising from the operation of farm machinery.

4. Section I does not apply to **bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured**.

   However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workmen's compensation law.

5. Section I does not apply to **bodily injury** of a fellow employee of an **insured** injured in the course of his employment if the **bodily injury** arises from the use of an auto in the business of his employer. This exclusion does not apply to **your** fellow employee.

6. Section I does not apply to any **insured** for **bodily injury** to the spouse of that **insured**. We will cover a spouse if named as a third party defendant in a legal action initiated by his or her spouse against another party.

7. Section I does not apply to damage to **your** property or **your** spouse's property.

8. Section I does not apply to an **owned auto** while used by a person (other than **you** or a **relative**) when he is employed or otherwise engaged in the **auto business**.

9. Section I does not apply to a **non-owned auto** while maintained or used by any person while the person is employed or otherwise engaged in:

   (a) any **auto business** if the accident arises out of or the **non-owned auto** is used while the person is engaged in that business.

   (b) any other business or occupation of any **insured** if the accident arises out of or the **non-owned auto** is used while the person is engaged in that business or occupation, except a **private passenger auto** used by **you** or **your** chauffeur or domestic servant while engaged in such other business.

10. Section I does not apply to property owned, transported or used by an **insured**.

11. Section I does not apply to property, including motor vehicles of any type, rented to or in the charge of an **insured** other than a residence or private garage.

12. Section I does not apply to an auto acquired by **you** during the policy term if **you** have purchased other liability insurance for it.

13. Section I does not apply to the United States of America or any of its agencies.

14. Section I does not apply to any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

15. Section I does not apply to **bodily injury** or **property damage** that results from the operation of a **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads and is not registered for use on public roads.

16. Section I does not apply to punitive or exemplary damages, regardless of any other provision of this policy.

17. Section I does not apply to any liability assumed under any contract or agreement.

**18.** Section I does not apply to **bodily injury** or **property damage** while any motor vehicle or **trailer** is:

(a) used by a **transportation network company driver** who is logged onto a **transportation network company's digital network** but is not engaged in a **transportation network company prearranged trip**; or

(b) used by a **transportation network company driver** while the **TNC driver** provides a **transportation network company prearranged trip**.

**19.** Section I does not apply to any motor vehicle, or series of motor vehicles, leased by **you** or a **relative** for less than six months unless the motor vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**20.** Section I does not apply to any motor vehicle, or series of vehicles, regularly rented by **you** or a **relative** on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the motor vehicle for this coverage, in the declarations of this policy.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as **insureds** with regard to an **owned auto**:

**1.** **you** and **your relatives**;

**2.** any other person using the auto with **your** permission. The actual use must be within the scope of that permission;

**3.** any other person or organization for his or its liability because of acts or omissions of an **insured** under **1.** or **2.** above.

Section I applies to the following with regard to a **non-owned auto**:

**1.** (a) **you** for all **non-owned autos** as defined;

(b) **your relatives** when using a **private passenger auto, utility auto, farm auto,** or **trailer**.

Such use by **you** and **your relatives** must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

**2.** a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an **insured** under **1.** above.

The coverage limits stated in the Declarations are our maximum obligations regardless of the number of **insureds** involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law.

The **insured** agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of **your** state, we agree to increase **your** coverages to the extent required of out-of-state motorists by local law, including the law of any Canadian province. No person can be paid more than once for any item of loss as a result of this provision.

## LIMITS OF LIABILITY

Regardless of the number of autos or **trailers** to which this policy applies:

**1.** The limit of Bodily Injury Liability stated in the Declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of **bodily injury** sustained by one person as the result of one occurrence.

**2.** The limit of such liability stated in the Declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of any one occurrence.

**3.** The limit of Property Damage Liability stated in the Declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

**4.** We will provide supplemental limits of liability of $50,000 if **bodily injury** results in the death of any one person in any one accident and subject to the limit for any one person, $100,000 for **bodily injury** that results in the death of two or more persons in any one accident.

These limits of liability will be reduced as follows:

(a) For the death of one person, the $50,000 limit shall be reduced by any amounts paid to or on behalf of that person under the Bodily Injury Liability Coverage of this policy.

(b) For the death of two or more persons, and subject to the limitations in (a) above, the $100,000 limit will be reduced by any amounts paid to or on behalf of those persons under the Bodily Injury Liability Coverage of this policy.

**OTHER INSURANCE**

If the *insured* has other insurance against a loss covered by **Section I** of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply to **Section I**:

**1.** NOTICE

As soon as possible after an occurrence, written notice must be given to us or our authorized agent stating:

(a) the identity of the *insured*;

(b) the time, place and details of the occurrence;

(c) the names and addresses of the injured, and of any witnesses; and

(d) the names of the owners and the description and location of any damaged property.

A. If a claim or suit is brought against an *insured*, he must as soon as reasonably possible send us each demand, notice, summons or other process received.

B. Failure to give any required notice within the time prescribed therein shall not invalidate any claim made by the *insured*, an injured person or any other claimant if it is shown not to have been reasonably possible to give such notice within the prescribed time and the notice was given as soon as was reasonably possible thereafter.

C. Failure to give notice as soon as reasonably possible after an occurrence shall not invalidate any claim made by the *insured*, injured person or any other claimant, unless the failure to provide timely notice has prejudiced us, except as provided in paragraph B. above.

D. If we disclaim liability or deny coverage for a claim arising out of the wrongful death or personal injury of any person based upon the failure to provide timely notice, then the injured person or other claimant may maintain an action directly against us, in which the sole question is our disclaimer or denial based on the failure to provide timely notice, unless within 60 days following such disclaimer or denial, we or the *insured*:

(i) Initiates an action to declare the rights of the parties under the insurance policy; and

(ii) Names the injured person or other claimant as a party to the action.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limits of coverage apply separately to each. An auto and an attached *trailer* are considered to be one auto.

**3.** ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

(a) in the investigation of the occurrence; and

(b) in making settlements; and

(c) in the conduct of suits; and

(d) in enforcing any right of contribution or indemnity against any legally or responsible person or organization because of *bodily injury* or *property damage*; and

(e) at trials and hearings; and

(f) in securing and giving evidence; and

(g) by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**4.** ACTION AGAINST US

No suit will lie against us:

(a) unless the *insured* has fully complied with all the policy's terms and conditions, and

(b) until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) by a final judgment against the *insured* after actual trial; or

(ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

**5.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights. This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION II - AUTOMOBILE MEDICAL PAYMENTS COVERAGE
## PROTECTION FOR YOU AND YOUR PASSENGERS FOR MEDICAL EXPENSES
## AND AUTOMOBILE MEDICAL PAYMENTS

**DEFINITIONS**

The definitions of terms shown under **Section I** apply to this coverage. In addition, under this coverage, **occupying** means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this coverage, we will pay all reasonable expenses actually incurred by an **insured** within one year from the date of accident for necessary medical, surgical, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This coverage applies to:

1. **you** and each **relative** who sustains **bodily injury** caused by accident:

   (a) while **occupying** the **owned auto**; or

   (b) while **occupying** a **non-owned auto** if **you** or **your relative** reasonably believe **you** have the owner's permission to use the auto and the use is within the scope of that permission; or

   (c) when struck as a pedestrian by an auto or **trailer**.

2. any other person who sustains **bodily injury** caused by an accident while **occupying** the **owned auto** while being used by **you**, a resident of **your** household, or other persons with **your** permission.

**EXCLUSIONS**

1. Section II does not apply to **bodily injury** while any motor vehicle or **trailer** is being used as a public or livery conveyance to carry passengers for hire, or while any vehicle or **trailer** is used to carry goods for hire. However, this exclusion does not apply to an ordinary car pool or share-the-expense car pool. A share-the-expense car pool is one where the only reimbursement an **insured** receives is the reasonable cost of gas and depreciation for the distance traveled.

2. Section II does not apply to an **insured** while **occupying** a vehicle located for use as a residence or premises.

3. Section II does not apply to **you** and **your relatives** for **bodily injury** sustained while **occupying** or when struck by:

   (a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or

   (b) a vehicle operated on rails or crawler-treads.

4. Section II does not apply to persons employed in the **auto business**, if the accident arises out of that business and if benefits are required to be provided under a worker's compensation law.

5. Section II does not apply to **bodily injury** sustained due to **war**.

6. Section II does not apply to the United States of America or any of its agencies are not covered as an insured, a third party beneficiary, or otherwise.

7. Section II does not apply to **bodily injury** caused by an auto driven in or preparing for, whether or not prearranged or organized, any racing, speed, or demolition contest or stunting activity of any nature.

8. Section II does not apply to **bodily injury** while any vehicle or **trailer** is:

   (a) used by a **transportation network company driver** who is logged onto a **transportation network company's digital network** but is not engaged in a **transportation network company prearranged trip**; or

   (b) used by a **transportation network company driver** while the **TNC driver** provides a **transportation network company prearranged trip**.

9. Section II does not apply to **bodily injury** sustained by any **insured** while operating, **occupying,** or when struck as a pedestrian by any vehicle leased by **you** or a **relative** for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

10. Section II does not apply to **bodily injury** sustained by any **insured** while operating, **occupying,** or when struck as a pedestrian by any vehicle regularly rented by **you** or a **relative** on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**LIMIT OF LIABILITY**

The limit of liability for Medical Payments coverage stated in the Declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains **bodily injury** in one accident. This applies regardless of the number of persons insured or the number of autos or **trailers** to which this policy applies.

**OTHER INSURANCE**

This coverage shall be excess insurance over any mandatory PIP, Optional Basic Economic Loss, or additional personal injury protection benefits paid or payable, under this or any other auto no-fault policy.

If the **insured** has other medical payments insurance against a loss covered by **Section II** of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide to a person who sustains **bodily injury** while **occupying** a vehicle **you** do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply to this coverage:

**1.** NOTICE

As soon as possible after an accident, written notice must be given to us or our authorized agent stating:

    (a) the identity of the **insured**;

    (b) the time, place and details of the accident; and

    (c) the names and addresses of the injured, and of any witnesses.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached trailer are considered to be one auto.

**3.** ACTION AGAINST US

Suit will not lie against us unless the insured has fully complied with all the policy terms.

**4.** MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the **insured**.

**5.** SUBROGATION

When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization.

Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them.

---

**SECTION III - PHYSICAL DAMAGE COVERAGES**
**YOUR PROTECTION FOR LOSS OF OR DAMAGE TO YOUR CAR**

---

**DEFINITIONS**

The definitions of the terms **auto business**, **digital network**, **farm auto**, **non-owned auto, private passenger auto**, **relative**, **temporary substitute auto**, **transportation network company**, **transportation network company driver**, **transportation network company passenger**, **transportation network company prearranged trip**, **transportation network company vehicle**, **utility auto**, **you**, and **war** under **Section I** apply to **Section III** also. Under this Section, the following special definitions apply:

**1.** **Actual cash value** is the replacement cost of the auto or property less **depreciation** or **betterment**.

**2.** **Betterment** is improvement of the auto or property to a value greater than its pre-loss condition.

**3.** **Collision** means **loss** caused by upset of the **owned auto** or its collision with another object, including an attached vehicle.

**4.** **Comprehensive** means **loss** caused other than by **collision** and includes but is not limited to the following causes: (a) missiles; (b) falling objects; (c) fire; (d) lightning; (e) theft; (f) larceny; (g) explosion; (h) earthquake;(i) colliding with a bird or animal; (j) windstorm; (k) hail; (l) water; (m) flood; (n) malicious mischief; (o) vandalism; (p) riot; or (q) civil commotion.

**5.** **Custom parts or equipment** means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a) are permanently installed or attached; or

    (b) alter the appearance or performance of a vehicle;

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the **owned auto** using bolts or brackets, including slide-out brackets.

6. **Depreciation** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

7. **Diminution of value** means the difference, if any, between the market value of the **owned auto** immediately preceding a **loss** and the market value of the **owned auto** after repair of physical damage resulting from that **loss**.

8. **Insured** means:

   (a) regarding the **owned auto**:
      (i) **you** and **your relatives**;
      (ii) a person or organization maintaining, using or having custody of the auto with **your** permission, if his use is within the scope of that permission.
   (b) regarding a **non-owned auto**: **you** and **your relatives**, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

9. **Loss** means direct and accidental loss of or damage to:

   (a) the auto, including its equipment; or
   (b) other insured property.

10. **Owned auto** means:

   (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) a **private passenger auto, farm auto** or **utility auto** or **a trailer**, ownership of which **you** acquire during the policy period or for which **you** enter into a lease for a term of six months or more during the policy period, if
      (i) it replaces an **owned auto** as described in (a) above, or
      (ii) we insure all **private passenger autos**, **farm autos, utility autos** and **trailers** owned or leased by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;
   (c) a **temporary substitute auto**.

11. **Trailer** means a trailer designed for use with a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built in sleeping facility designed for recreational or camping use.

## LOSSES WE WILL PAY FOR YOU

### Comprehensive (Excluding Collision)

1. We will pay for each **loss**, less the applicable deductible, caused other than by **collision**, to the **owned auto** or **non-owned auto**. This includes glass breakage.

   At the option of the **insured**, breakage of glass caused by **collision** may be paid under the Collision Coverage, if included in the policy.

2. We will pay up to $200 per occurrence, less any deductible shown in the Declarations, for **loss** to personal effects due to:

   (a) fire; (b) lightning; (c) flood; (d) theft of the entire automobile; (e) falling objects; (f) earthquake; or (g) explosion.

   The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

1. We will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to a **collision**. The property must be owned by **you** or a **relative**, and must be in or upon an owned auto.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the **loss**.

   Reimbursement will not exceed $30 per day nor $900 per **loss**.

2. We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

## EXCLUSIONS

### When The Physical Damage Coverages Do Not Apply

1. Section III does not apply to an auto being used as a public or livery conveyance to carry passengers for hire, or while any auto is used to carry goods for hire. However, this exclusion does not apply to an ordinary car pool or share-the expense car pool. A share-the-expense car pool is one where the only reimbursement an *insured* receives is the reasonable cost of gas and depreciation for the distance traveled.

2. Section III does not apply to *loss* due to *war*.

3. Section III does not apply to *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. Section III does not apply to damage caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. Section III does not apply to tires, when they alone are damaged by *collision*.

6. Section III does not apply to *loss* due to radioactivity.

7. Section III does not apply to *loss* to any tape, wire, record disc or other medium for use with a device designed for the recording, and/or reproduction of sound.

8. Section III does not apply to *loss* to any radar or laser detector.

9. Section III does not apply to *trailers* when used for business or commercial purposes with vehicles other than *private passenger autos*, *farm autos* or *utility autos*.

10. Section III does not apply to *loss* resulting from:
    (a) the acquisition of a stolen vehicle;
    (b) any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d) the sale of an *owned auto*.

11. Section III does not apply to *loss* for *custom parts or equipment*, in excess of $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

12. Section III does not apply to any liability assumed under any contract or agreement.

13. Section III does not apply to the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

14. Section III does not apply to any *loss* caused by participation in or preparing for, whether or not prearranged or organized, any racing or demolition contest or stunting activity of any nature.

15. Section III does not apply to an auto being used:
    (a) by a *transportation network company driver* who is logged onto a *transportation network company's digital network* but is not engaged in a *transportation network company prearranged trip*; or
    (b) by a *transportation network company driver* while the *TNC driver* provides a *transportation network company prearranged trip*.

16. Section III does not apply to any vehicle, or series of vehicles, leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

17. Section III does not apply to any vehicle, or series of vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

### LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. is the *actual cash value* of the property at the time of the *loss*;

2. will not exceed the prevailing competitive price to repair or replace the property at the time of loss, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any *diminution of value* that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3. to personal effects arising out of one occurrence is $200;

4. to a *trailer* not owned by *you* is $500;

5. for *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle. However, the most we will pay for *loss* to *custom parts or equipment* is $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by **Section III**, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage coverages:

**1.** INSPECTION

We or our representatives have the right to inspect any *owned auto* or *non-owned auto* of the *private passenger auto* type insured or intended to be insured before physical damage coverages will be provided.

Physical Damage coverage for an additional or replacement *private passenger auto* will not become effective until *you* notify us and request coverage for the auto.

*You* must cooperate and make the auto available for any inspection we may require.

**2.** NOTICE

As soon as possible after a *loss*, written notice must be given to us or our authorized agent stating:

(a) the identity of the *insured*;

(b) a description of the auto or *trailer*;

(c) the time, place and details of the *loss*; and

(d) the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

**3.** TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

**4.** ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

(a) in the investigation of the *loss*;

(b) in making settlements;

(c) in the conduct of suits;

(d) in enforcing any right of subrogation against any legally responsible person or organization;

(e) at trials and hearings;

(f) in securing and giving evidence; and

(g) by obtaining the attendance of witnesses.

**5.** ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

**6.** INSURED'S DUTIES IN EVENT OF LOSS

In the event of *loss* the *insured* will:

(a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.

(b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.

(c) At our request, the *insured* will exhibit the damaged property.

**7.** RECOVERY OF STOLEN OR ABANDONED AUTOS

If a stolen or abandoned auto covered by this policy is located, we have the right to take custody of the auto for safekeeping.

**8.** APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

**9.** PAYMENT OF LOSS

We will:

(a) pay for the **loss**; or

(b) repair or replace the damaged or stolen property.

At any time before the **loss** is paid or the property replaced, we may return any stolen property to **you** or to the address shown in the Declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for **loss** either with the **insured** or the owner of the property.

Payment of a **loss** under this policy will not depend on the repair of the damaged auto. However, we are entitled to the following:

(a) a completed "Certification of Automobile Repairs" as prescribed by the New York State Insurance Department of Financial Services;

(b) an itemized repair invoice prepared by the automobile repairer if the auto is repaired; and

(c) an inspection of the auto, whether or not it is repaired.

**10.** NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the **loss** of the auto.

**11.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the **insured's** rights of recovery against others. The **insured** will help us to enforce these rights. The **insured** will do nothing after **loss** to prejudice these rights.

This means we will have the right to sue for or otherwise recover the **loss** from anyone else who may be held responsible.

---

**SECTION IV - SUPPLEMENTARY UNINSURED/UNDERINSURED MOTORISTS COVERAGE**
**PROTECTION FOR YOU AND YOUR PASSENGERS FOR INJURIES CAUSED BY UNINSURED MOTORISTS**
*THIS SECTION APPLIES ONLY IF A PREMIUM AMOUNT IS SHOWN ON THE POLICY DECLARATION FOR*
*"SUPPLEMENTARY UNINSURED/UNDERINSURED MOTORISTS" COVERAGE*

---

We, the Company, agree with **you**, the named insured, in return for payment of the premium for this coverage, to provide Supplementary Uninsured/Underinsured Motorists (SUM) coverage, subject to the following terms and conditions:

**INSURING AGREEMENTS**

**I. DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. Under this Section, for purposes of the SUM coverage, the following special definitions apply:

**1. Insured.** The unqualified term "insured" means:

(a) **you**, as the named insured and, while residents of the same household, **your** spouse and the **relatives** of either **you** or **your** spouse;

(b) any other person while **occupying**:

(i) a motor vehicle insured for SUM under this policy; or

(ii) any other motor vehicle while being operated by **you** or **your** spouse; and

(c) any person, with respect to damages such person is entitled to recover, because of **bodily injury** to which this coverage applies sustained by an **insured** under paragraph (a) or (b) above.

**2. Bodily Injury.** The term "bodily injury" means bodily harm, including sickness, disease or death resulting therefrom.

**3. Uninsured motor vehicle.** The term "uninsured motor vehicle" means a motor vehicle that, through its ownership, maintenance or use, results in **bodily injury** to an **insured**, and for which:

(a) no bodily injury liability insurance policy or bond applies to such motor vehicle (including a vehicle that was stolen, operated without the owner's permission or unregistered) at the time of the accident or

(b) the owner and operator cannot be identified (including a hit-and-run motor vehicle), and which causes **bodily injury** to an **insured** by physical contact with the **insured** or with a motor vehicle **occupied** by the **insured** at the time of the accident, provided that:

(i) the **insured** or someone on the **insured's** behalf:

a. reported the accident within 24 hours or as soon as reasonably possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles; and

b. filed with the Company a statement under oath that the **insured** or the **insured's** legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

(ii) at the request of the Company, the **insured** or the **insured's** legal representative makes available for inspection the motor vehicle the **insured** was **occupying** at the time of the accident; or

(c) there is a bodily injury liability insurance coverage or bond applicable to such motor vehicle at the time of the accident, but:

    (i) the amount of such insurance coverage or bond is less than the third-party bodily injury liability limit of this policy; or

    (ii) the amount of such insurance coverage or bond has been reduced, by payments to other persons injured in the accident, to an amount less than the third-party bodily injury liability limit of this policy; or

    (iii) the insurer writing such insurance coverage or bond denies coverage or such insurer is or becomes insolvent.

The term **uninsured motor vehicle** shall not include a motor vehicle that is:

(1) insured under the liability coverage of this policy; or

(2) owned by **you**, the named insured, or **your** spouse residing in **your** household; or

(3) self-insured within the meaning of the financial responsibility law of the **state** in which the motor vehicle is registered, or any similar **state** or federal law, to the extent that the required amount of such coverage is equal to, or greater than, the third-party bodily injury liability limits of this policy; or

(4) owned by the United States of America, Canada, a **state**, a political subdivision of any such government or an agency of any of the foregoing; or

(5) a land motor vehicle or **trailer**, while located for use as a residence or premises and not as a motor vehicle or while operated on rails or crawler-treads; or

(6) a farm type vehicle or equipment designed for use principally off public roads, except while actually upon public roads.

**4. Occupying.** The term "occupying" means in, upon, entering into or exiting from a motor vehicle.

**5. State.** The term "state" means a state, territory or possession of the United States, the District of Columbia or a province of Canada.

**II.  Damages for Bodily Injury Caused by Uninsured Motor Vehicles**

We will pay all sums that the **insured** or the **insured's** legal representative shall be legally entitled to recover as damages from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the **insured**, caused by an accident arising out of such **uninsured motor vehicle's** ownership, maintenance or use, subject to the Exclusions, Conditions, Limits and other provisions set forth in this SUM coverage.

**III.  SUM Coverage Period and Territory**

This SUM coverage applies only to accidents that occur:

    a. during the policy period shown in the Declarations; and

    b. in the United States, its territories or possessions, or Canada.

**EXCLUSIONS**

This SUM coverage does **not** apply to:

**1.** **bodily injury** to an **insured**, including care or loss of services recoverable by an **insured**, if such **insured**, such **insured's** legal representatives or any person entitled to payment under this coverage, without our written consent, settles any lawsuit against any person or organization that may be legally liable for such injury, care or loss of services, however this provision shall be subject to Condition **9.**;

**2.** **bodily injury** to an **insured** incurred while **occupying** a motor vehicle owned by that **insured**, if such motor vehicle is not insured for SUM coverage by the policy under which a claim is made or is not a newly acquired or replacement motor vehicle covered under the terms of this policy;

**3.** non-economic loss resulting from **bodily injury** to an **insured** arising from an accident in New York State, unless the **insured** has sustained serious injury as defined in Section 5102(d) of the New York Insurance Law; or

**4.** **bodily injury** to an **insured** incurred while the insured motor vehicle is used by a **transportation network company driver** who is logged onto a **transportation network company's digital network** but is not engaged in a **transportation network company prearranged trip** or while the **TNC driver** provides a **transportation network company prearranged trip** pursuant to article 44-B of the Vehicle and Traffic Law.

**CONDITIONS**

**1.** **Policy Provisions:** None of the Insuring Agreements, Exclusions or Conditions of the policy shall apply to this SUM coverage except: "Duties After an Accident or Loss", "Fraud" and "Termination", if applicable.

**2.** **Notice and Proof of Claim:** As soon as practicable, the **insured** or other person making a claim shall give us written notice of a claim under this SUM coverage.

    (i) As soon as practicable after our written request, the **insured** or other person making claim shall give us written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment and other details we need to determine the SUM amount payable.

    (ii) The **insured** and every other person making claim hereunder shall, as may reasonably be required, submit to examinations under oath by any person we name and subscribe the same. Proof of claim shall be made upon forms we furnish unless we fail to furnish such forms within 15 calendar days after receiving notice of claim.

3. **Medical Reports:**  The *insured* shall submit to physical examinations by physicians we select when and as often as we may reasonably require. The *insured*, or in the event of the *insured's* incapacity, the *insured's* legal representative (or in the event of the *insured's* death, the *insured's* legal representative or the person or persons entitled to sue therefor), shall upon each request from us authorize us to obtain copies of relevant medical reports and records.

4. **Notice of Legal Action:**  If the *insured* or the *insured's* legal representative brings any lawsuit against any person or organization legally responsible for the use of a motor vehicle involved in the accident, a copy of the summons and complaint or other process served in connection with the lawsuit shall be forwarded immediately to us by the *insured* or the *insured's* legal representative.

5. **SUM Limits and Maximum Limits:**
   (a) The SUM limits payable under this coverage shall be determined as follows:
      (1) if an accident results in *bodily injury* excluding death to one or more persons, then we will provide the SUM limits stated in the Declarations; or
      (2) if an accident results in the death of one or more persons, then we will provide the greater of the SUM limits stated in the Declarations or $50,000 for such *bodily injury* resulting in death sustained by one person as the result of any one accident and, subject to this per person limit, $100,000 for such *bodily injury* resulting in death sustained by two or more persons as the result of any one accident; or
      (3) if an accident results in both *bodily injury* to one or more persons and the death of one or more persons, then we will provide the greater of the SUM limits stated in the Declarations or the limits required by the mandatory uninsured motorists (UM) coverage as follows:
         $25,000 per injured person and, subject to this per person limit,
         $50,000 to two or more persons injured as the result of any one accident; and
         $50,000 per person for *bodily injury* resulting in death and, subject to this per person limit,
         $100,000 to two or more persons for *bodily injury* resulting in death as the result of any one accident.
   (b) Regardless of the number of *insureds*, our maximum payment under this SUM coverage shall be the difference between:
      (1) the SUM limits; and
      (2) the motor vehicle bodily injury liability insurance or bond payments received by the *insured* or the *insured's* legal representative, from or on behalf of all persons that may be legally liable for the *bodily injury* sustained by the *insured*.
   (c) The SUM limit shown on the Declarations for "Each Person" is the amount of coverage for all damages due to *bodily injury* to one person. The SUM limit shown under "Each Accident" is, subject to the limit for each person, the total amount of coverage for all damages due to *bodily injury* to two or more persons in the same accident.

6. **Non-Stacking:**  Regardless of the number of motor vehicles involved, persons covered, claims made, motor vehicles or premiums shown in this policy or premium paid, the limits, whether for UM coverage or SUM coverage, shall never be added together or combined for two or more motor vehicles to determine the extent of insurance coverage available to an *insured* who was injured in the same accident.

7. **Priority of Coverage:**  If an *insured* is entitled to UM coverage or SUM coverage under more than one policy, the maximum amount such *insured* may recover shall not exceed the highest limit of such coverage for any one motor vehicle under any one policy and the following order of priority shall apply:
   (a) a policy covering a motor vehicle occupied by the injured person at the time of the accident;
   (b) a policy covering a motor vehicle not involved in the accident under which the injured person is a named insured; and
   (c) a policy covering a motor vehicle not involved in the accident under which the injured person is an *insured* other than the named insured.
   Coverage available under a lower priority policy applies only to the extent that it exceeds the coverage of a higher priority policy.

8. **Exhaustion Required:**  Except as provided in Condition **9.**, we will pay under this SUM coverage only after the limits of liability have been exhausted under all motor vehicle bodily injury liability insurance policies or bonds applicable at the time of the accident in regard to any one person who may be legally liable for the *bodily injury* sustained by the *insured*.

**9. Release or Advance:**
   (a) In accidents involving the *insured* and one or more negligent parties, if such *insured* settles with any such party for the available limit of the motor vehicle bodily injury liability coverage of such party, a release may be executed with such party after thirty calendar days from our receipt of *your* written notice to us, unless within this time period we agree to advance such settlement amounts to the *insured* in return for the cooperation of the *insured* in our lawsuit on behalf of the *insured*.
   (b) We shall have a right to the proceeds of any such law suit equal to the amount advanced to the *insured* and any additional amounts paid under this SUM coverage. Any excess above those amounts shall be paid to the *insured*.
   (c) An *insured* shall not otherwise settle with any negligent party, without our written consent, such that our rights would be impaired.

**10. Non-Duplication:** This SUM coverage shall not duplicate any of the following:
   (a) benefits payable under workers' compensation or other similar laws;
   (b) non-occupational disability benefits under article nine of the Workers' Compensation Law or other similar law;
   (c) any amounts recovered or recoverable pursuant to article 51 of the New York Insurance Law or any similar motor vehicle insurance payable without regard to fault;
   (d) any valid or collectible motor vehicle Medical Payments insurance; or
   (e) any amounts recovered as *bodily injury* damages from sources other than motor vehicle bodily injury liability insurance policies or bonds.

**11. Arbitration:**
   (a) If any *insured* makes a claim under this SUM coverage and we do not agree that such *insured* is legally entitled to recover damages from the owner or operator of an *uninsured motor vehicle* because of *bodily injury* sustained by the *insured*, or we do not agree as to the amount of payment that may be owing under this SUM coverage, then, at the option and upon written demand of such *insured*, the matter or matters upon which such *insured* and we do not agree shall be settled by arbitration, administered by the American Arbitration Association, pursuant to procedures approved by the Superintendent of Financial Services for this purpose.
   (b) If the maximum amount of SUM coverage provided by this endorsement equals the amount of coverage required to be provided by section 3420(f)(1) of the New York Insurance Law and article 6 or 8 of the New York Vehicle and Traffic Law, then such disagreement shall be settled by such arbitration procedures upon written demand of either the *insured* or us.
   Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof, and any such *insured* and we each agree to be bound by any award made by the arbitrator as to this SUM coverage. For purposes of this Condition, the term "insured" includes any person authorized to act on behalf of the *insured*.

**12. Subrogation:**   If we make a payment under this SUM coverage, then we have the right to recover the amount of the payment from any person legally responsible for the *bodily injury* or loss of the person to whom, or for whose benefit, such payment was made to the extent of the payment. The *insured* or any person acting on behalf of the *insured* must do whatever is necessary to transfer this right of recovery to us. Except as permitted by Condition **9.**, such person shall do nothing to prejudice this right.

**13. Payment of Loss by Company:**   We shall pay any amount due under this SUM coverage to the *insured* or, at our option, to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents.

**14. Action Against Company:** No lawsuit shall lie against us unless the *insured* or the *insured's* legal representative has first fully complied with all the terms of the SUM coverage.

**15. Survivor Rights:** If *you* or *your* spouse, if a resident of the same household, dies, then this SUM coverage shall cover:
   (1) the survivor as named insured;
   (2) the decedent's legal representative as named insured, but only while acting within the scope of such representative's duties as such; and
   (3) any *relative* who was an insured at the time of such death.

## SECTION V - GENERAL CONDITIONS

These conditions apply to all coverages in this policy except as otherwise noted.

**1.** TERRITORY

This condition for Uninsured Motorists coverage is set out in **Section IV** of the policy. As to all other coverages, this policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

**2.** PREMIUM

When you dispose of, acquire ownership of, or replace a *private passenger auto, farm auto* or *utility auto,* or *trailer*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

**3.** CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an amendment or endorsement issued to form a part of this policy.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that *you* will cooperate with us in determining if this information is correct and complete.

(c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

**4.** DISPOSAL OF VEHICLE

If *you* relinquish possession of a leased vehicle or if *you* sell or relinquish ownership of an *owned auto*, any coverage provided by this policy for that vehicle will terminate on the date *you* do so.

**5.** ASSIGNMENT

Assignment of interest under this policy will not bind us without our consent. If *you* die, this policy will cover *your* surviving spouse if covered under the policy immediately prior to *your* death until the end of the policy period. We will also cover:

(a) the executor or administrator of *your* estate, but only while acting within the scope of his duties; and

(b) any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

**6.** POLICY PERIOD

The condition for Uninsured and Underinsured Motorists coverage is set out in **Section IV** of the policy. As to all other coverages, unless otherwise cancelled, this policy will expire as shown in the Declarations. But, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the Declarations.

**7.** CANCELLATION BY THE INSURED

*You* may cancel this policy by notifying us of the date of cancellation, which must be later than the date *you* notify us. However, the cancellation date can be a previous date if *you* provide documentation that *you* no longer have possession of the vehicle or it was insured elsewhere. *Your* policy cannot be cancelled prior to *your* last six month renewal date.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

**8.** CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 15 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b) 20 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

**9.** CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

(a) *You* do not pay the initial premium on other than a renewal policy or any additional premium for this policy or fail to pay any premium installment when due to us or our agent.

(b) *Your* driver's license or that of any operator resident in *your* household or any customary operator of an *owned auto* has been suspended or revoked during the current or preceding policy year.

(c) We may cancel upon discovery of fraud or misrepresentation in obtaining the policy or in the making of a claim under that policy.

(d) *You* change *your* principal residence to a state where we do not issue new or renewal automobile insurance policies.

(e) Instead of canceling *your* policy, we may, if we choose:

    (i) reduce *your* Bodily Injury and Property Damage Liability coverage limits to the minimum amounts required by New York law; or

    (ii) cancel any other coverage to the extent permitted by law.

If we chose to reduce or cancel any coverage, we must mail to *you*, at the address shown in the policy, written notice giving the effective date of the action and our reasons. We will mail this notice at least 20 days prior to the effective date of the reduction in limits or the cancellation of coverage.

**10.** RENEWAL

If the policy is written for a period of less than one year, we may nonrenew or conditionally renew only on each anniversary date of the original effective date.

We will neither refuse to renew this policy or condition its renewal upon the reduction of limits or the elimination of coverage until a written notice of our intent is mailed to  *you* at the address shown in the policy at least 45 but no more than 60 days prior to the policy expiration. This notice will also state our reasons for the nonrenewal or conditional renewal. The mailing or delivery of the notice by us shall be sufficient proof of notice.

The above notice will not be required if:

(a) *You* do not pay any premium as we require to renew this policy whether payable directly to us, our agent or indirectly under any premium finance plan or extension of credit.  *Your* payment shall be timely if made within 15 days after our mailing of the notice of cancellation for nonpayment of premium; or

(b) *You*, or an insurer or an agent or broker authorized by *you*, gives us written notice that the policy has been replaced or is not desired.

**11.** DIVIDEND PROVISION

*You* may be entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

**12.** DECLARATIONS

By accepting this policy, *you* agree that:

(a) the statements in *your* application and in the Declarations are your agreements and representations;

(b) this policy is issued in reliance upon the truth of these representations; and

(c) this policy, along with the application and Declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**13.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) at the time of application;

(b) at any time during the policy period; or

(c) in connection with the presentation or settlement of a claim.

**14.** EXAMINATION UNDER OATH

An *insured* or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**15.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of New York are amended to conform to those statutes.

If we revise the policy form in any way in which any of the coverages under  *your* policy could be extended or broadened without additional premium charge, *your* coverage under this policy shall be broadened during the policy period to be effective as soon as we receive approval of our revision.

**16.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state New York.

**SECTION VI - AMENDMENTS AND ENDORSEMENTS**

### 1. MANDATORY PERSONAL INJURY PROTECTION ENDORSEMENT

**SECTION I - MANDATORY PERSONAL INJURY PROTECTION**

The Company will pay **first-party benefits** to reimburse for **basic economic loss** sustained by an **eligible injured person** on account of personal injuries caused by an accident arising out of the **use or operation** of a **motor vehicle** or a **motorcycle** during the policy period and within the United States of America, its territories or possessions, or Canada.

**First-Party Benefits**

**First-party benefits**, other than **death benefits**, are payments equal to **basic economic loss**, reduced by the following:

(a) 20 percent of the **eligible injured person's** loss of earnings from work to the extent that an **eligible injured person's basic economic loss** consists of such loss of earnings;

(b) amounts recovered or recoverable on account of **personal injury** to an **eligible injured person** under State or Federal laws providing social security disability or workers' compensation benefits, or disability benefits under article 9 of the New York Workers' Compensation Law;

(c) the amount of any applicable deductible, provided that such deductible shall apply to each accident, but only to the total of **first-party benefits** otherwise payable to the **named insured** and any **relative** as a result of that accident.

**Basic Economic Loss**

**Basic economic loss** shall consist of **medical expense, work loss, other expense** and, when death occurs, a **death benefit** as herein provided. Except for such **death benefit, basic economic loss** shall not include any loss sustained on account of death. **Basic economic loss** of each **eligible injured person** on account of any single accident shall not exceed $50,000, except that any **death benefit** hereunder shall be in addition thereto.

**Medical Expense**

**Medical expense** shall consist of necessary expenses for:

(a) medical, hospital (including service rendered in compliance with Article 41 of the Public Health Law, whether or not such services are rendered directly by a hospital), surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services;

(b) psychiatric, physical and occupational therapy and rehabilitation;

(c) any nonmedical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of New York; and

(d) any other professional health services.

These **medical expenses** will not be subject to a time limitation, provided that, within one year after the date of the accident, it is ascertainable that further **medical expenses** may be sustained as a result of the injury. Payments hereunder for necessary **medical expenses** shall be subject to the limitations and requirements of Section 5108 of the New York Insurance Law.

**Work Loss**

**Work loss** shall consist of the sum of the following losses and expenses, up to a maximum payment of $2,000 per month for a maximum period of three years from the date of the accident:

(a) loss of earnings from work which the **eligible injured person** would have performed had such person not been injured, except that an employee who is entitled to receive monetary payments, pursuant to statute or contract with the employer, or who receives voluntary monetary benefits paid for by the employer, by reason of such employee's inability to work because of **personal injury** arising out of the **use or operation** of a **motor vehicle** or a **motorcycle**, shall not be entitled to receive **first-party benefits** for loss of earnings from work to the extent that such monetary payments or benefits from the employer do not result in the employee suffering a reduction in income or a reduction in such employee's level of future benefits arising from a subsequent illness or injury; and

(b) reasonable and necessary expenses sustained by the **eligible injured person** in obtaining services in lieu of those which such person would have performed for income.

**Other Expenses**

**Other expenses** shall consist of all reasonable and necessary expenses, other than **medical expense** and **work loss**, up to $25 per day for a period of one year from the date of the accident causing injury.

**Death Benefit**

Upon the death of any **eligible injured person**, caused by an accident to which this coverage applies, the Company will pay to the estate of such person a **death benefit** of $2,000.

**Eligible Injured Person**

Subject to the exclusions and conditions set forth below, an *eligible injured person* is:

(a) the *named insured* and any *relative* who sustains *personal injury* arising out of the *use or operation* of any *motor vehicle*;

(b) the *named insured* and any *relative* who sustains *personal injury* arising out of the *use or operation* of any *motorcycle,* while not *occupying* a *motorcycle*;

(c) any other person who sustains *personal injury* arising out of the *use or operation* of the *insured motor vehicle* in the State of New York while not *occupying* another *motor vehicle*; or

(d) any New York State resident who sustains *personal injury* arising out of the *use or operation* of the *insured motor vehicle* outside of New York while not *occupying* another *motor vehicle*.

**Exclusions**

This coverage does not apply to *personal injury* sustained by:

(a) the *named insured* while *occupying*, or while a pedestrian through being struck by, any *motor vehicle* owned by the *named insured* with respect to which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is not in effect;

(b) any *relative* while *occupying*, or while a pedestrian through being struck by, any *motor vehicle* owned by the *relative* with respect to which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is not in effect;

(c) the *named insured* or *relative* while *occupying*, or while a pedestrian through being struck by, a *motor vehicle* in New York State, other than the *insured motor vehicle*, with respect to which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is in effect; however, this exclusion does not apply to *personal injury* sustained in New York State by the *named insured* or *relative* while *occupying* a bus or school bus, as defined in Sections 104 and 142 of the New York Vehicle and Traffic Law, unless that person is the operator, an owner, or an employee of the owner or operator, of such bus or school bus;

(d) any person while *occupying* a *motorcycle*;

(e) any person who intentionally causes his or her own *personal injury*;

(f) any person as a result of operating a *motor vehicle* while in an intoxicated condition or while his or her ability to operate the vehicle is impaired by the use of a drug (within the meaning of Section 1192 of the New York Vehicle and Traffic Law) except that coverage shall apply to necessary emergency health services rendered in a general hospital, as defined in section 2801(10) of the New York Public Health Law, including ambulance services attendant thereto and related medical screening. However, where the person has been convicted of violating section 1192 of the New York Vehicle and Traffic Law while operating a *motor vehicle* in an intoxicated condition or while his or her ability to operate such vehicle is impaired by the use of a drug, and the conviction is a final determination, the Company has a cause of action against such person for the amount of first party benefits that are paid or payable;

(g) any person while:

(1) committing an act which would constitute a felony, or seeking to avoid lawful apprehension or arrest by a law enforcement officer;

(2) operating a *motor vehicle* in a race or speed test;

(3) operating or *occupying* a *motor vehicle* known to that person to be stolen; or

(4) repairing, servicing or otherwise maintaining a *motor vehicle* if the conduct is within the course of a business of repairing, servicing or otherwise maintaining a *motor vehicle* and the injury occurs on the business premises;

(h) the *named insured* or *relative* while not *occupying* a *motor vehicle* or a *motorcycle* when struck by a *motorcycle* in New York State with respect to which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is in effect;

(i) any New York State resident other than the *named insured* or *relative* injured through the *use or operation* of the *insured motor vehicle* outside of New York State if such resident is the owner or a *relative* of the owner of a *motor vehicle* insured under another policy providing the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act;

(j) any New York State resident other than the *named insured* or *relative* injured through the *use or operation* of the *insured motor vehicle* outside of New York State if such resident is the owner of a *motor vehicle* for which the coverage required by the New York Comprehensive Motor Vehicle Insurance Reparations Act is not in effect; or

(k) any person who is injured while, pursuant to article 44-B of the Vehicle and Traffic Law, the **insured motor vehicle** is being **used or operated** by a **transportation network company driver**.

**Other Definitions**

When used in reference to this coverage:

(a) the **insured motor vehicle** means a **motor vehicle** owned by the **named insured** and to which the bodily injury liability insurance of this policy applies and for which a specific premium is charged;

(b) **motorcycle** means a vehicle as defined in section 123 of the New York Vehicle and Traffic Law and which is required to carry financial security pursuant to Article 6, 8 or 48-A of the Vehicle and Traffic Law;

(c) **motor vehicle** means a motor vehicle, as defined in Section 311 of the New York Vehicle and Traffic Law, and also includes fire and police vehicles, but shall not include any motor vehicle not required to carry financial security pursuant to Article 6, 8 or 48-A of the Vehicle and Traffic Law, or a **motorcycle** as defined above;

(d) **named insured** means the person or organization named in the declarations;

(e) **occupying** means in or upon or entering into or alighting from;

(f) **personal injury** means bodily injury, sickness or disease;

(g) **relative** means a spouse, child, or other persons related to the **named insured** by blood, marriage, or adoption (including a ward or foster child), who regularly resides in the **insured's** household, including any such person who regularly resides in the household, but is temporarily living elsewhere; and

(h) **use or operation** of a **motor vehicle** or a **motorcycle** includes the loading or unloading of such vehicle.

**Conditions**

**1.** ACTION AGAINST COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.

**2.** NOTICE

In the event of an accident, written notice setting forth details sufficient to identify the **eligible injured person** , along with reasonably obtainable information regarding the time, place and circumstances of the accident, shall be given by, or on behalf of, each **eligible injured person** , to the Company, or any of the Company's authorized agents as soon as reasonably practicable, but in no event more than 30 days after the date of the accident, unless the **eligible injured person** submits written proof providing clear and reasonable justification for the failure to comply with such time limitation. If an **eligible injured person** or that person's legal representative institutes a proceeding to recover damages for **personal injury** under Section 5104(b) of the New York Insurance Law, a copy of the summons and complaint or other process served in connection with such action shall be forwarded as soon as practicable to the Company or any of the Company's authorized agents by such **eligible injured person** or that person's legal representative.

**3.** PROOF OF CLAIM; MEDICAL, WORK LOSS, AND OTHER NECESSARY EXPENSES

In the case of a claim for health service expenses, the **eligible injured person** or that person's assignee or representative shall submit written proof of claim to the Company, including full particulars of the nature and extent of the injuries and treatment received and contemplated, as soon as reasonably practicable, but, in no event later than 45 days after the date services are rendered. The **eligible injured person** or that person's representative shall submit written proof of claim for **work loss** benefits and for other necessary expenses to the Company as soon as reasonably practicable but, in no event, later than 90 days after the **work loss** is incurred or the other necessary services are rendered. The foregoing time limitations for the submission of proof of claim shall apply unless the **eligible injured person** or that person's representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation. Upon request by the Company, the **eligible injured person** or that person's assignee or representative shall:

(a) execute a written proof of claim under oath;

(b) as may reasonably be required submit to examinations under oath by any person named by the Company and subscribe the same;

(c) provide authorization that will enable the Company to obtain medical records; and

(d) provide any other pertinent information that may assist the Company in determining the amount due and payable.

The **eligible injured person** shall submit to medical examination by physicians selected by, or acceptable to, the Company, when, and as often as, the Company may reasonably require.

**4.** ARBITRATION

In the event any person making a claim for **first-party benefits** and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Financial Services.

**5.** REIMBURSEMENT AND TRUST AGREEMENT

To the extent that the Company pays *first-party benefits*, the Company is entitled to the proceeds of any settlement or judgment resulting from the exercise of any right of recovery for damages for *personal injury* under Section 5104(b) of the New York Insurance Law. The Company shall have a lien upon any such settlement or judgment to the extent that the Company has paid *first- party benefits*. An *eligible injured person* shall:

(a) hold in trust, for the benefit of the Company, all rights of recovery which that person shall have for *personal injury* under Section 5104(b) of the New York Insurance Law;

(b) do whatever is proper to secure, and shall do nothing to prejudice, such rights; and

(c) execute, and deliver to the Company, instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

An *eligible injured person* shall not compromise an action to recover damages brought under Section 5104(b) of the New York Insurance Law, except:

(a) with the written consent of the Company;

(b) with approval of the court; or

(c) where the amount of the settlement exceeds $50,000.

**6.** OTHER COVERAGE

Where more than one source of *first-party benefits* required by Article 51 of the New York Insurance Law and Article 6, 8, or 44-B of the New York Vehicle and Traffic Law is available and applicable to an *eligible injured person* in any one accident, this Company is liable to an *eligible injured person* only for an amount equal to the maximum amount that the *eligible injured person* is entitled to recover under this coverage, divided by the number of available and applicable sources of required *first-party benefits*. An *eligible injured person* shall not recover duplicate benefits for the same elements of loss under this coverage or any other mandatory first- party motor vehicle or no-fault motor vehicle insurance coverage issued in compliance with the laws of another state.

If the *eligible injured person* is entitled to benefits under any such mandatory first-party motor vehicle or no-fault motor vehicle insurance for the same elements of loss under this coverage, this Company shall be liable only for an amount equal to the proportion that the total amount available under this coverage bears to the sum of the amount available under this coverage and the amount available under such other mandatory insurance for the common elements of loss. However, where another state's mandatory first-party or no-fault motor vehicle insurance law provides unlimited coverage available to an *eligible injured person* for an element of loss under this coverage, the obligation of this Company is to share equally for that element of loss with such other mandatory insurance until the $50,000, or $75,000 if Optional Basic Economic Loss (OBEL) coverage is purchased, limit of this coverage is exhausted by the payment of that element of loss and any other elements of loss.

## SECTION II

## EXCESS COVERAGE

If motor vehicle medical payments coverage or any disability coverages or uninsured motorists coverage are afforded under this policy, such coverages shall be excess insurance over any Mandatory PIP, OBEL, or Additional PIP benefits paid or payable, or which would be paid or payable but for the application of a deductible, under this or any other motor vehicle No-Fault insurance policy.

## SECTION III CONSTITUTIONALITY

If it is conclusively determined by a court of competent jurisdiction that the New York Comprehensive Motor Vehicle Insurance Reparations Act or any amendment thereto, is invalid or unenforceable in whole or in part, then, subject to the approval of the Superintendent of Financial Services, the Company may amend this policy and may also recompute the premium for the existing or amended policy.

These amendments and recomputations will be effective retroactively to the date that such act or any amendment is deemed to be invalid or unenforceable in whole or in part.

### 2. RENTAL VEHICLE COVERAGE ENDORSEMENT

This Rental Vehicle Coverage endorsement applies only to, and is a part of, every motor vehicle liability insurance policy that covers less than five *private passenger motor vehicles*.

For each such policy, this endorsement provides coverage for the *insured's* obligations in the event of actual damage to, or loss of, any *rental vehicle*, including loss of use, rented by the *insured* anywhere in the United States, its territories or possessions, and Canada under a rental agreement with a term no longer than thirty continuous days, regardless of where such *rental vehicle* may be registered, rented or operated.

Rental Vehicle Coverage shall provide protection regardless of: (a) fault; and (b) whether the *rental vehicle* is rented or operated for business or pleasure, unless used for transporting persons or property for hire.

## DEFINITIONS

1. **Insured** means named insured or any **relative**.
2. **Relative** means a spouse, child or other person related to the named insured by blood, marriage or adoption (including a ward or foster child), who regularly resides in the **insured's** household, including any such person who regularly resides in the household, but who is temporarily living elsewhere.
3. **Private passenger motor vehicle** means:
   (a) a motor vehicle of the private passenger or station wagon type that is owned or hired under a **long-term contract** by an individual or by husband and wife, and is neither used as a public or livery conveyance for passengers nor rented to others without a driver; or
   (b) a motor vehicle with a pick-up body, a delivery sedan, panel truck or van, owned by an individual or by husband or wife who are residents of the same household, or by a family farm copartnership or a family farm corporation, and not customarily used in the occupation, profession or business of the **insured** other than farming or ranching, whether or not used in the course of driving to or from work.

   "Public or livery conveyance" as used in paragraph (a) of this definition shall not include the use of the vehicle as a transportation network company vehicle pursuant to article 44-B of the Vehicle and Traffic Law.
4. **Long-term contract** means a contract with a term of six months or longer.
5. **Rental vehicle** means a vehicle of the type described in **3.** above, if:
   (a) not used for transporting persons or property for hire (except if the **insured** does so solely as a transportation network company driver pursuant to article 44-B of the Vehicle and Traffic Law); and
   (b) owned by a person engaged in the business of renting or leasing vehicles rented or leased without a driver to persons other than the owner and is registered in the name of such owner.

## PRIORITY OF PAYMENT

1. In no event shall payment be made under this endorsement duplicating payment made by this policy, another policy or another insurer for the same claim.
2. If more than one policy could cover the claim, payment on the claim shall be made in the following order of priority:
   (a) the policy with respect to which the person is a named insured;
   (b) if the person is not a named insured on any policy, the policy with respect to which the person is an **insured**; and
   (c) where two or more policies provide coverage of equal priority, the policy or insurer with respect to which the claim is first submitted.
3. An inquiry about coverage or notification of damage to, or loss of, a **rental vehicle** shall constitute submission of a claim.

## EXCLUSIONS

No Rental Vehicle Coverage shall be provided:

1. arising beyond the geographic limitations of the policy to which Rental Vehicle Coverage is endorsed;
2. to an **insured** who has committed fraud in connection with damage to, or loss of, a **rental vehicle**, including loss of use;
3. for damage to, or loss of, a **rental vehicle**, including loss of use, which the **rental vehicle** company is precluded from recovering from the **insured**:
   (a) pursuant to the terms of the rental agreement; or
   (b) due to the prohibitions of Section 396-z of the General Business Law or similar statutory provision of other jurisdictions;
4. while the **rental vehicle** is used by a transportation network company driver who is logged onto the transportation network company's digital network, but is not engaged in a transportation network company prearranged trip or while the driver provides a transportation network company prearranged trip.

## SUBROGATION

1. In the event of any payment under this endorsement, the insurer is subrogated to the extent of such payments to the rights of the person to whom, or for whose benefit, such payments were made.
2. Such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such subrogation rights, and shall not act in a manner that may prejudice such rights.
3. Subrogation shall not be pursued against any person who operated the **rental vehicle** with the **insured's** permission.

### 3. SPECIAL ENDORSEMENT- UNITED STATES GOVERNMENT EMPLOYEES

The definitions of *actual cash value* under **Section III** applies to this special endorsement.

**A.**  Under the Property Damage Liability coverage of **Section I**, we provide coverage to United States Government employees, civilian or military, using:

1.  Motor vehicles owned or leased by the United States Government or any of its agencies, or
2.  Rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits described in paragraph **B.** below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.**  The following limits apply to this coverage:

1.  A $100 deductible applies to each occurrence.
2.  For vehicles described in **A.**1 above, our liability shall not exceed the lesser of the following:
    (a)  The *actual cash value* of the property at the time of the occurrence; or
    (b)  The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    (c)  Two months basic pay of the insured; or
    (d)  The limit of Property Damage liability coverage stated in the Declarations.
3.  For vehicles described in **A.**2. above, our liability shall not exceed the lesser of the following:
    (a)  The *actual cash value* of the property at the time of the occurrence; or
    (b)  The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    (c)  The limit of Property Damage Liability coverage stated in the Declarations.

This insurance is excess over other valid and collectible insurance.

HOME OFFICE
5260 Western Avenue
Chevy Chase, Maryland 20815-3799



GEICO General Insurance Company
Policy Number: 4195-70-20-16

The policy contract, Declarations, and any amendments or endorsements issued to form a part thereof, completes the policy.

**In Witness Whereof**, the company has caused this Policy to be executed and attested.

W. C. E. Robinson
Secretary

Todd A. Combs
President



# Automobile Policy Amendment
## New York

Policy Number:

Introduction is revised as follows:
**Throughout this policy, "use" of a vehicle includes loading and unloading.**
**SECTION I - LIABILITY COVERAGES**
**DEFINITIONS**
The following definitions are revised:
**20.** *You* and *Your* means only the individual(s) named in the **Declarations Page** as **Named Insured** and their spouse if a resident of the same household.
 *You* and *your* does not include any individual(s) named in the **Declarations Page** as:
(a) **Additional Drivers**;
(b) **Additional Driver**; or
(c) any other individual(s).
**EXCLUSIONS**
**Section I** does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.
The following exclusion is revised:
**5.** Section I does not apply to *bodily injury* of a fellow employee of an *insured* injured in the course of their employment if the *bodily injury* arises from the use of an auto in the business of their employer. This exclusion does not apply to *your* fellow employee.
**6.** Section I does not apply to any *insured* for *bodily injury* to the spouse of that *insured*. We will cover a spouse if named as a third party defendant in a legal action initiated by their spouse against another party.
**PERSONS INSURED**
**Who Is Covered**
The following persons insured, *owned auto* **3.** is revised:
**3.** any other person or organization for their or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.
The following persons insured, *non-owned auto* **2.** is revised:
**2.** a person or organization, not owning or hiring the auto, regarding their or its liability because of acts or omissions of an *insured* under **1.** above.
**CONDITIONS**
Condition **1.** A. under NOTICE is revised as follows:
A. If a claim or suit is brought against an *insured*, they must as soon as reasonably possible send us each demand, notice, summons or other process received.
The sentence under (g) to Condition **3.** ASSISTANCE AND COOPERATION OF THE INSURED is revised as follows:
Only at their own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.
The last sentence under Condition **4.** ACTION AGAINST US is revised as follows:
Bankruptcy or insolvency of the *insured* or their estate will not relieve us of our obligations.
**SECTION II - AUTOMOBILE MEDICAL PAYMENTS COVERAGE**
The definitions of terms shown under **Section I** apply to this coverage.
**CONDITIONS**
Condition **4.** MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS is revised as follows:
As soon as possible, the injured person or their representative will furnish us with written proof of claim, under oath if required. After each request from us, they will give us written authority to obtain medical reports and copies of records.
**SECTION III - PHYSICAL DAMAGE COVERAGES**
**DEFINITIONS**
The following definition is revised:
**8.** *Insured* means:
(a) regarding the *owned auto*:
(i) *you* and *your relatives*;
(ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if their use is within the scope of that permission.
(b) regarding a *non-owned auto*: *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

**CONDITIONS**

Condition **6.** (b) INSURED'S DUTIES IN EVENT OF LOSS is revised as follows:

    (b)  File with us, within 91 days after loss, their sworn proof of loss including all information we may reasonably require.

Condition **8.** APPRAISAL is revised as follows:

If we and the ***insured*** do not agree on the amount of ***loss***, either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of ***loss***. We and the ***insured*** will each pay their chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

**SECTION V - GENERAL CONDITIONS**

The following Condition **5.** (a) ASSIGNMENT is revised:

    (a)  the executor or administrator of ***your*** estate, but only while acting within the scope of their duties; and

**GEICO**®

# Automobile Policy Endorsement
## Emergency Road Service Coverage

Policy Number:

Effective Date:

The Policy Number and Effective Date need be completed only when this endorsement is issued after the effective date of the policy.

*Your* policy provisions are amended as follows:

The following coverage is added if "Emergency Road Service" appears in the "Coverages" space on the Declarations page and a premium is shown.

**SECTION III - PHYSICAL DAMAGE COVERAGES**

**LOSSES WE WILL PAY**

The following is added after the last sentence under **LOSSES WE WILL PAY**:

**Emergency Road Service Coverage**

If an **owned auto** or **non-owned auto** becomes disabled, we will determine and pay reasonable and customary expenses an **insured** incurs for the following:

1.  Battery jump start or labor to install a new battery purchased at the **insured's** expense, performed where the **owned auto** or **non-owned auto** became disabled;
2.  Lockout services up to $100 per lockout if keys to the **owned auto** or **non-owned auto** are lost, broken or accidentally locked in the **owned auto** or **non-owned auto**. Lockout services does not include the cost to repair, replace, or reprogram any lost, stolen or damaged electronic or digital keys, including, but not limited to, key fobs;
3.  Towing from where the **owned auto** or **non-owned auto** became disabled to the **nearest** repair facility where the necessary repairs can be made as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person;
4.  Winching the **owned auto** or **non-owned auto** as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person;
5.  Delivery of gas. WE DO NOT PAY FOR THE COST OF THE GAS;
6.  Changing a flat tire with the **insured's** operable spare at the location where the **owned auto** or **non-owned auto** became disabled.

**EXCLUSIONS**

The following additional exclusions apply under this endorsement:

We will not provide coverage under this endorsement for:

1.  More than one reimbursement per disablement.
2.  The cost of gas, oil, batteries, or tire(s).
3.  The delivery of air, inflation of a tire(s), or patching of a tire(s).
4.  Any parts, labor, fluids or other materials or charges necessary for the completion of any repair.
5.  Any repairs, labor or towing not specifically listed under **LOSSES WE WILL PAY**-**Emergency Road Service Coverage**.
6.  Any vehicle:
    a.  driven off established roads;
    b.  driven in areas not designed for private passenger automobile traffic;
    c.  disabled and/or stuck due to participation in and/or preparation for driving a vehicle through a pit of mud or on a mud track, whether or not prearranged or organized; or
    d.  disabled and/or stuck intentionally by any **insured**.
7.  Any vehicle arising from impoundment or abandonment.
8.  Any vehicle illegally parked or associated with illegal activity.

**OBTAINING SERVICE UNDER THIS ENDORSEMENT**

*You* may secure service under this endorsement for **Emergency Road Service Coverage** in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, allows the *insured* to contact GEICO Emergency Road Service via its mobile app or a toll-free number to initiate the dispatch of a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any charges, expenses, or other fees not specifically addressed above in **LOSSES WE WILL PAY**, or lockout services in excess of $100, are not covered and are at the *insured's* own expense.

If we are unable to locate and dispatch a service vendor to an *insured* and the *insured* hires services without the assistance of a GEICO Emergency Road Service representative, we will reimburse an *insured* only as addressed above in **LOSSES WE WILL PAY**.

**HIRED SERVICES**

The second method occurs when the *insured* does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $100 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

**CONTINUATION OF COVERAGE**

Upon each renewal period, we reserve the right to review the continuation of the ERS coverage. Removal of the ERS coverage from the policy is subject to underwriting review process at each renewal. All vehicles listed on the policy with the ERS coverage are subject to this review.

This endorsement forms a part of *your* policy. It is effective at 12:01 A.M. local time at *your* address on the effective date shown above.

**GEICO.**

**AUTOMOBILE POLICY ENDORSEMENT**
**COMPREHENSIVE (EXCLUDING COLLISION)**
**COVERAGE -**
**NON-DEDUCTIBLE WINDOW GLASS BREAKAGE**

Policy Number:

We agree with **you** that under the Comprehensive (Excluding Collision) Coverage, no deductible applies to breakage of window glass.

A331 (04-20)



**AUTOMOBILE POLICY AMENDMENT**
**RENTAL REIMBURSEMENT AMENDMENT**

Policy Number:

We agree with you that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage-Rental Reimbursement**

When there is a **loss** to an **owned auto** for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the **insured** toward costs the **insured** incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the **owned auto**. This coverage applies only if:

1. The **owned auto** is withdrawn from use for more than 24 consecutive hours, and
2. The **loss** to the **owned auto** is covered under comprehensive or collision coverage of this  policy.

When there is a total theft of the entire auto, we will reimburse the  **insured** toward costs the **insured** incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the **insured** for reasonable rental expenses beginning 48 hours after a theft of  the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage shall be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy. In that event, the amount payable under this amendment is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2. above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this amendment.

Reimbursement for rental charges shall end the earliest of when the  **owned auto** has been:

1. Returned to **you**;
2. Repaired;
3. Replaced; or
4. If the **owned auto** is deemed by us to be a total loss, then seventy two (72) hours after we pay the applicable limit of liability under Section III of the  policy. Our determination as to whether the  **owned auto** is deemed to be a total loss will be made in accordance with applicable New York insurance law and insurance regulations in effect at the time of the loss.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this amendment.

A431NY (04-20)

**GEICO.**

Policy Number:

**Rental Vehicle Reimbursement**
**Notice to Policyholders**

As a valued GEICO policyholder this notice is to inform you that if you have rental reimbursement or another coverage which provides rental reimbursement on your policy, you are entitled to choose **ANY** rental vehicle company and/or rental vehicle company location, in the event of a covered loss.

M-489-NY (9-21)

ENDORSEMENT

## LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number:

Effective Date:

Any covered *loss* under the Physical Damage Coverages of the policy will be settled in accordance with the policy provisions. However, if *you* agree and this agreement is documented in the claim file, we may make the check or draft payable to *you* and the lienholder and/or *your* designated repairer.

The Lienholder's interest will not be protected:

1. When fraud has been committed by or at the direction of any *insured*; or

2. In any case of conversion, embezzlement, secretion, or intentional damage to the vehicle(s) by or at the direction of any *insured*, or any owner of the vehicle(s); or

3. For any *loss* or damage caused by, or reasonably expected to result from, a criminal act or omission of any *insured* or any owner of the vehicle(s). For the purpose of this clause, criminal acts or omissions do not include traffic violations.

The Lienholder has no greater rights under the provisions of the policy than any *insured*.

The Lienholder must notify us if they become aware of any increased hazard or change of ownership of the vehicle(s) or they will lose all rights under this policy.

If any *insured* fails to file with us a Proof of Loss within 91 days after the *loss*, the Lienholder must do so within the following 60 days.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of our payment to the Lienholder. If the policy is in effect as to the Lienholder but has been canceled as to any *insured*, the Lienholder must assign the loan to us to the extent of our payment, if we ask.

We will notify the Lienholder at least 5 days before we cancel their interest in the policy. This 5 day notice does not pertain to suspension of physical damage coverage in accordance with Regulation 79 - 11 NYCRR 67.0.

This endorsement forms a part of *your* policy. It is effective at 12:01 A.M. local time at *your* address on the effective date shown above.

UE316E (02-16)

Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JONATHAN CHICK, *on behalf of himself and*
*all others similarly situated*,

                                 Plaintiff,          Docket No.:
                                                2:24-CV-01124

          -against-

GEICO GENERAL INSURANCE COMPANY and
CCC INTELLIGENT SOLUTIONS, INC.,

                                Defendants.
-----------------------------------------------------------------X

## DECLARATION OF KEVIN COSTIGAN IN SUPPORT OF DEFENDANT GEICO GENERAL INSURANCE COMPANY'S LETTER MOTION TO COMPEL APPRAISAL AND STAY CASE PENDING APPRAISAL

I, Kevin Costigan, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, the following.

1.     I am currently employed with Defendant GEICO General Insurance Company ("GEICO").

2.     I am authorized on behalf of GEICO to make the statements contained herein. I have personal knowledge of the information discussed below based upon my experience with GEICO and my review of the data and records maintained by GEICO in the ordinary course of business.

3.     I have reviewed the documents GEICO maintains in its files related to Plaintiff Jonathan Chick's claim for the August 10, 2023 total loss of his 1998 Jeep Cherokee Classic.

4.     GEICO offered to settle Plaintiff's total loss vehicle claim for $3,667.94, which included $3,837.00 for the actual cash value of Plaintiff's loss vehicle, $330.94 in Tax, and was

1

less Plaintiff's $500 contractually-agreed deductible.  Plaintiff agreed to settle his total loss vehicle claim for the $3,667.94 GEICO offered.

5.      GEICO issued payment and Plaintiff accepted the check GEICO issued to Plaintiff for $3,667.94 in settlement of Plaintiff's total loss vehicle claim.

6.      Plaintiff did not—either before or after he accepted GEICO's payment in settlement of his total loss vehicle claim—indicate to GEICO that he disagreed with the value for which GEICO and Plaintiff agreed to settle Plaintiff's total loss vehicle claim.

7.      GEICO first became aware Plaintiff disagreed with the value for which GEICO and Plaintiff agreed to settle Plaintiff's total loss vehicle claim after Plaintiff filed his Complaint against GEICO on February 13, 2024.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at Suffolk County, New York on April 16, 2024.

By: _____

Kevin Costigan, Director Physical Damage

2

Exhibit 3



1850 NORTH CENTRAL AVENUE, SUITE 1400
PHOENIX, AZ 85004-4568
TELEPHONE: 602-285-5000
FACSIMILE: 844-670-6009
http://www.dickinsonwright.com

JAMIE L. HALAVAIS (SHE/HER/HERS)
JHalavais@dickinsonwright.com
602-285-5095

February 29, 2024

**<u>VIA EMAIL</u>**

Lewis J. Saul
Edward A. Coleman
Lewis Saul & Associates, P.C.
29 Howard Street, 3rd Floor
New York, NY 10013
lsaul@lewissaul.com
ecoleman@lewissaul.com

      Re:    *Chick v. GEICO General Insurance Company, CCC Intelligent Solutions, Inc.*
           E.D.N.Y., Case No. 2:24-cv-01124 – Demand for Appraisal

Dear Counsel:

    I am writing on behalf of GEICO General Insurance Company ("GEICO") to demand appraisal of the loss to the 1998 Jeep Cherokee Classic identified by Jonathan Chick as damaged on August 10, 2023 in paragraph 81 of Mr. Chick's Complaint. GEICO's insurance policy with Mr. Chick, No. 4206357420, includes an appraisal provision that states:

> If we and the ***insured*** do not agree on the amount of ***loss***, either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of ***loss***. We and the ***insured*** will each pay their chosen appraiser and will bear equally the other expenses of the appraisal and umpire.
> We will not waive our rights by any of our acts relating to appraisal.

The Complaint makes it clear that you represent a GEICO insured who disagrees with the amount GEICO paid and Mr. Chick accepted for the 1998 Jeep Cherokee Classic identified in the Complaint. With this letter, GEICO demands an appraisal of the loss. In accordance with the

DICKINSON WRIGHT PLLC

February 29, 2024
Page 2


foregoing provision, GEICO will identify its chosen appraiser, and would ask you to do the same on behalf of your client.  Please respond confirming your agreement to the appraisal process no later than March 14, 2024.

Sincerely,

DICKINSON WRIGHT PLLC

Jamie L. Halavais (she/her/hers)

ARIZONA   CALIFORNIA   FLORIDA   ILLINOIS   KENTUCKY   MICHIGAN   NEVADA   OHIO   TENNESSEE   TEXAS   WASHINGTON DC   TORONTO

Exhibit 4

# LEWIS SAUL & ASSOCIATES, P.C.

### ATTORNEYS AT LAW

LEWIS J. SAUL
ADMITTED DC, NY BARS

EDWARD A. COLEMAN
ADMITTED NY, NJ BARS

─────────────
OF COUNSEL

KEVIN M. FITZGERALD
ADMITTED ME BAR

29 HOWARD STREET
3RD FLOOR
NEW YORK, NY 10013

TOLL-FREE: (888) 747-5342
TELEPHONE: (212) 376-8450
FACSIMILE: (212) 376-8447

WEBSITE: www.lewissaul.com
EMAIL: info@lewissaul.com

PORTLAND OFFICE
120 EXCHANGE STREET
SUITE 200
PORTLAND, ME 04101

LONG ISLAND OFFICE
383 CRANBERRY HOLE ROAD
AMAGANSETT, NY 11930

March 13, 2024

<u>Via Email</u>

Jaime L. Halavais
Dickinson Wright PLLC
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004
JHalavais@dickinsonwright.com

Re:    Chick v. GEICO General Insurance Company, et al. – Case No. 2:24-cv-01124
       Response to demand for appraisal

Dear Counsel:

We write in response to your letter, dated February 29, 2024, demanding an appraisal of the loss to Plaintiff Jonathan Chick's 1998 Jeep Cherokee Classic in connection with the above referenced case.

Neither we, nor the courts, agree that there is any obligation, at this time, for an appraisal. We are well aware of the courts' decisions on this issue in the Eastern District of New York and, as a result, we respectfully decline.

Very truly yours,
LEWIS SAUL & ASSOCIATES

Edward A. Coleman